OPINION OF THE COURT
J. Emmett Murphy, J.
This is a summary holdover proceeding brought by a tenant against her subtenant. The premises are covered by the Emer *191 gency Tenant Protection Act of 1974 (ETPA; L 1974, ch 576, § 4, as amended).
Petitioner leased the apartment from 300 North Broadway Associates for a term commencing September 1, 1982 and then sublet the premises to one Nicolas Kuzon for the period from October 1, 1982 to June 30, 1983. She then entered into a written sublease agreement with respondent for a term commencing July 1, 1983 and ending June 29, 1984. Respondent has remained in the premises since June 29, 1984 without a written lease.
What appear to be substantial rent overcharges are the subject of a separate proceeding before the Division of Housing and Community Renewal. By stipulation, no money judgment is sought herein.
On November 29, 1985 petitioner served a "Thirty Day Notice Terminating Tenancy” on the respondent. It purportedly terminated respondent’s tenancy as of December 31, 1985. On January 24, 1986 the instant holdover proceeding was commenced by the petitioner. On March 4, 1986 the respondent answered the petition and sought, inter alia, dismissal of the petition and the "granting to the respondent of the status of primary tenant”, on the theory that petitioner’s tenancy is illusory.
The concept of illusory tenancy is a relatively new one, which serves as a vehicle to protect against speculative profiteering by tenants of rent-controlled or rent-stabilized apartments (see, e.g., Hutchins v Conciliation & Appeals Bd., 125 Misc 2d 809; Conti v Citrin, NYLJ, Aug. 14, 1985, p 11, col 2, Greenfield, J. [Sup Ct, NY County]; Matter of Walsh [New York City Conciliation & Appeals Bd.], NYLJ, Oct. 14, 1982, p 7, col 4, Rettinger, J. [Sup Ct, NY County]; Matter of Avon Furniture Leasing v Popolizio, 116 AD2d 280 [1st Dept]).
This case, submitted on an agreed statement of facts and exhibits, is clearly one in which a declaration of illusory tenancy is warranted. Petitioner has always maintained a separate residence nearby, never lived in the subject apartment, makes no allegation of facts which would justify the conclusion that she was only temporarily absent from what she considered to be her primary residence, and in fact attempted, in July of 1983, to negotiate with other persons to sell them her rights to the apartment under a planned cooperative conversion which was later defeated. Such actions are clearly inconsistent with an intent to return to a home. They *192 support only the conclusion that she rented for the commercial purpose of making a profit. Such commercial use clearly subverts the purpose of the ETPA and like laws enacted to protect primary residences (Hutchins v Conciliation & Appeals Bd., supra).
A distinction of jurisdictional significance must be addressed here. Administrative boards and the Supreme Court have declared tenancies to be illusory and subtenants to be prime tenants. Some analysis is required before a court of limited jurisdiction may dispose of what appears facially to be an attack on the landlord’s (prime tenant’s) title (prime lease) and an equitable counterclaim for declaratory relief.
The illusory nature of petitioner’s tenancy has been pleaded herein as a defense. The request for relief, however, asks, inter alia, that the court "Grant Respondent the status of prime tenant entitled to a renewal lease.”
The distinction between an equitable counterclaim and an equitable defense is an important one in a City Court, since UCCA 905 specifically confers jurisdiction to hear all such defenses, whereas the court’s jurisdiction to hear equitable counterclaims is limited (cf. UCCA 208), despite respondent’s unlimited right to assert them in the answer (RPAPL 743). An equitable defense is destructive of petitioner’s rights, but an equitable counterclaim requires an equitable decree which declares respondent’s rights to be superior to those of petitioner and affords affirmative relief. (Cf., e.g., 3 Rasch, New York Landlord & Tenant — Summary Proceedings § 1327; Matter of SCM Corp. [Fisher Park Lane Co.], 40 NY2d 788.) RPAPL 747 (2) preserves the respondent’s right to raise the counterclaim in a subsequent proceeding in a court of general jurisdiction.
This court concludes that it has jurisdiction to dispose of a claim of illusory tenancy as an equitable defense in a summary proceeding in which the tenant seeks to dispossess the subtenant. If established, the claim is destructive of petitioner’s right to maintain the proceeding, as the conventional landlord-tenant relationship is thereby shown never to have existed. The prime tenant is established to be not a tenant, but a broker for profit. Attempts to create and shelter this illegal marketplace "have been varied and creative and ofttimes cynically cloaked in a mantle of misleading nomenclature and fictitious characterizations of tenancy status. It is in response to such schemes that the law of illusory tenancy *193 evolved. [Citations omitted.]” (Matter of Avon Furniture Leasing v Popolizio, 116 AD2d 280, 284, supra.)
Whether it is the owner who seeks to oust the middleman (a nonprimary residence or illegal sublet case) or the subtenant who requests his removal (an illusory tenancy case) the substantive issue remains the same: Is the prime tenant a legitimate resident who is merely protecting his valuable property rights during a temporary absence from his home, or is he a businessman in an illegal middle market? If the former, he is protected by the ETPA (ETPA § 10 [a]) and similar statutes. If the latter, the illusory or fictitious nature of his tenancy will ultimately be declared at the instance of either the owner or the real tenant.
In Madison Co. v Derderian (130 Misc 2d 200, 201), the Appellate Term, First Department, rejected a Civil Court decision to the effect that "petitioner was required to first obtain a declaration from the Supreme Court to establish the fact of nonprimary residence before resorting to an eviction proceeding in Civil Court.” The Appellate Term found (p 201) "no policy reason or legislative intent to vest initial jurisdiction of nonprimary residence matters exclusively in the Supreme Court”. (See also, Park S. Assoc. v Mason, 123 Misc 2d 750, affd 126 Misc 2d 945.)
Since an "illusory tenancy” is, in substance, a "nonprimary residence” viewed from another perspective, it appears jurisdictionally sound to grant respondent’s request to declare the illusory nature of petitioner’s tenancy, at least to the extent that it results in an order dismissing the petition. While it may be that "[i]n such case, the subtenant will be accorded the full protection of the [ETPA]” (Matter of Avon Furniture Leasing v Popolizio, supra, at p 284), the power of this court to make such declaration in the present case and "grant respondent the status of prime tenant entitled to a renewal lease” is not beyond question.
While this court routinely, as part of each summary proceeding before it, determines which tenants are protected by the ETPA or rent control laws and which are not, the judicial declaration of status seems here to be more an equitable counterclaim than a defense. Further, the landlord is not a party to this action.
Dismissal of the petition leaves respondent in lawful possession of a residential apartment which is governed by the ETPA.
*194 Neither the doctrine of rescission nor reformation empowers this court to substitute the subtenant into the tenant’s lease. The second party to the agreement, the owner, is not a party to this proceeding and has had no opportunity to be heard herein.
There are important procedural differences even between illegal sublet and nonprimary residence cases, including the right to cure and the point at which the proceeding may be brought (cf., e.g., Pamela Equities Corp. v Camp, 127 Misc 2d 395). Of equal significance is the distinction between dismissing the petition (leaving respondent in possession of the apartment) and declaring that she is now substituted fully as the second party to the primary lease.
Highlighting this significance is the fact that shortly after this proceeding was submitted, the owner filed a petition against the prime tenant for nonpayment, in which summary proceeding the prime tenant is presently in default (index No. SP 1943-86). While this nonpayment proceeding, to which the subtenant was not a party, is insufficient to effect respondent’s eviction, her future rights to the apartment, including a written lease, a lease renewal and the right to buy if the cooperative conversion plan is revived, may turn upon such issues as attornment and tender. Her rights may be determined by a future summary proceeding between her and the owner, incidentally to the question of possession, or in the present proceeding before the Division of Housing and Community Renewal, or in an action in Supreme Court. Clearly they may not be fully adjudicated in this proceeding.
Accordingly, the respondent’s request to declare the illusory nature of petitioner’s tenancy and dismiss the petition is granted. Respondent’s application to be "granted the status of prime tenant entitled to lease renewal” is denied without prejudice.